## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BRANDON JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number 1:23-cv-01228-SEG |
| vs. | ) | |
| | ) | |
| WILLIAM J. PULTE, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT WILLIAM J. PULTE'S RENEWED MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY THIS ACTION

William J. Pulte ("Pulte"), by and through counsel, respectfully requests that this Court dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) because this matter involves identical parties and legal claims arising from the same underlying facts as an earlier-filed state court matter, *William J. Pulte v. Brandon Jones*, Case No. 502022CA012238XXXXMB, currently pending in the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County, Florida (the "Florida Action"). In the alternative, Pulte respectfully requests that the Court stay this action under *Colorado River*.

As set forth in the accompanying memorandum of law, dismissal under Rule 12(b)(2) is required because Brandon Jones has not established that Pulte, a Florida resident, had sufficient contacts with Georgia such that jurisdiction under Georgia's long-arm statute (O.C.G.A. § 9-10-91) is appropriate. Aside from the personal jurisdiction problems, abstention under *Colorado River* is appropriate and warranted in this case because litigating this action and the Florida Action simultaneously will result in piecemeal litigation through duplicative discovery and motion efforts, and could result in conflicting rulings on the same facts and legal issues. Moreover, the Florida Action has progressed further than this action, and Plaintiff Brandon Jones' claims can be adequately addressed as counterclaims in the Florida Action.

This 21st day of June, 2023.

/s/ J. Carole Thompson Hord
J. Carole Thompson Hord
Georgia Bar No. 291473
Andrew H. Pinter
Georgia Bar No. 232922
SCHREEDER WHEELER & FLINT, LLP
1100 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
(404) 681-3450
(404) 681-1046 (fax)
chord@swfllp.com
apinter@swfllp.com

William C. O'Neil (*pro hac vice*)
A. Matthew Durkin (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive

Chicago, IL 60601
(312) 558-5600
(312) 558-5700 (fax)
woneil@winston.com
mdurkin@winston.com

*Attorneys for Defendant William J. Pulte*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

BRANDON JONES,

   Plaintiff,

vs.

WILLIAM J. PULTE,

   Defendant.

)
)
)
)
)
)
)
)
)
)

Case Number 1:23-cv-01228-SEG

---

## DEFENDANT WILLIAM J. PULTE'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO DISMISS, <u>OR IN THE ALTERNATIVE, STAY THIS ACTION</u>

J. Carole Thompson Hord
Georgia Bar No. 291473
Andrew H. Pinter
Georgia Bar No. 232922
SCHREEDER WHEELER & FLINT, LLP
1100 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
(404) 681-3450
(404) 681-1046 (fax)
chord@swfllp.com
apinter@swfllp.com

William C. O'Neil (*pro hac vice*)
A. Matthew Durkin (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600
(312) 558-5700 (fax)
woneil@winston.com
mdurkin@winston.com

*Attorneys for Defendant William J. Pulte*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

ARGUMENT ........................................................................................................7

I. THIS COURT LACKS PERSONAL JURISDICTION OVER
PULTE AND MUST DISMISS THIS CASE PURSUANT TO
RULE 12(b)(2) .......................................................................................7

    A. Jones' Has Not Established Personal Jurisdiction Under
Georgia's Long-Arm Statute ..................................................8

    B. Subjecting Pulte to Personal Jurisdiction Would Violate the Due
Process Clause ......................................................................13

II. ABSTENTION IS WARRANTED UNDER COLORADO RIVER..........15

    A. Legal Standard......................................................................15

    B. This Action is Substantially Similar to the Florida Action ................17

    C. The Balance of the Colorado River Factors Favors Abstention .........19

        1. There is a Substantial Risk of Piecemeal Litigation. .................19

        2. The Florida Action Has Progressed Further. ..............................23

        3. Jones' Claims Should Be Brought as Counterclaims.................24

        4. Jones' Lawsuit Against Pulte Is Reactive...................................24

CONCLUSION ...................................................................................................25

**Cases**

*ACE Am. Ins. Co. v. Newcomb & Boyd, LLP*,
No. 1:17-CV-508-MHC, 2017 WL 7660405 (N.D. Ga. Sept. 28,
2017) ..................................................................................................18, 21, 22

*Amason & Assocs., Inc. v. Columbus Land Dev., LLC*,
No. 7:12-CVB02459-JHE, 2014 WL 467509 (N.D. Ala. Feb. 5,
2014) ...........................................................................................................22, 23

*Ambrosia Coal & Const. Co. v. Pages Morales*,
368 F.3d 1320 (11th Cir. 2004) ...................................................................16, 17

*Bradlee Mgmt. Servs., Inc. v. Cassells*,
249 Ga. 614 (1982) .............................................................................................10

*Brandenburg v. City of Vidalia*,
366 Ga. App. 51, 880 S.E.2d 625 (2022) ...........................................................11

*CCB, L.L.C. v. BankTrust*,
No. 3:10-CV-228/LAC/EMT, 2011 WL 13232376 (N.D. Fla. Jan.
3, 2011), *affirmed*, *CCB, LLC v. BankTrust*, 438 F. App'x 833
(11th Cir. 2011).....................................................................................................21

*Cobb v. Equifax Info. Services, LLC*,
122CV03195WMRCMS, 2023 WL 2933349 (N.D. Ga. Mar. 9,
2023) ....................................................................................................................13

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976)......................................................................................*passim*

*Corestates, Inc. v. Phillips*,
No. 1:16-CV-1170-ODE, 2016 WL 9454438 (N.D. Ga. Aug. 5,
2016) ....................................................................................................................22

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ...........................................................................8

*Doherty-Heinze v. Chrisley*,
   3:21-CV-105-TCB, 2022 WL 18938046 (N.D. Ga. July 18, 2022)..................12

*Georgia v. U.S. Army Corps of Engineers*,
   223 F.R.D. 691 (N.D. Ga. 2004) ......................................................................24

*Gold-Fogel v. Fogel*,
   16 F.4th 790 (11th Cir. 2021) ...............................................................15, 16, 21

*Hayes v. Irwin*,
   541 F. Supp. 397 (N.D. Ga. 1982)....................................................................10

*Hendricks v. Mortg. Elec. Registration Sys., Inc.*,
   No. 8:12-CV-2801-T-30TGW, 2013 WL 1279035 (M.D. Fla. Mar.
   28, 2013) .....................................................................................................20, 25

*Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of
   Ames*,
   279 Ga. 672 (2005) ......................................................................................9, 10

*IOU Cent., Inc. v. Schmitz*,
   1:20-CV-00007-ELR, 2020 WL 6882648 (N.D. Ga. June 10, 2020) .................9

*Jackson-Platts v. Gen. Elec. Cap. Corp.*,
   727 F.3d 1127 (11th Cir. 2013) ........................................................................17

*Jason v. Onuoha*,
   1:17-CV-1982-TWT, 2017 WL 4812359 (N.D. Ga. Oct. 25, 2017)..................12

*LABMD, Inc. v. Tiversa, Inc.*,
   509 Fed. Appx. 842 (11th Cir. 2013)...................................................................9

*Moorer v. Demopolis Waterworks & Sewer Bd.*,
   374 F.3d 994 (11th Cir. 2004) ..........................................................................20

*Newyorksocialdiary.com, LLC v. Palm Beach Soc. Diary LLC*,
   No. 21-81718-CIV, 2022 WL 970878 (S.D. Fla. Mar. 31, 2022)...............19, 20

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ...........................................................................7

*Pulte v. Jones*,
   Case No. 9:23-cv-80216-AMC (S.D. FL), Dkt. 1 ....................................5, 17, 25

*Rothschild & Co. Continuation Holdings A.G. v. Sklarov*,
440 F. Supp. 3d 1385 (N.D. Ga. 2020)................................................................8

*Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*,
1:18-CV-05385-SDG, 2021 WL 2355096 (N.D. Ga. June 9, 2021).................11

*Sini v. Citibank, N.A.*,
990 F. Supp. 2d 1370 (S.D. Fla. 2014)...........................................................20

*Sprint Nextel Corp. v. Ace Wholesale, Inc.*,
1:12-CV-02902-JEC, 2014 WL 688134 (N.D. Ga. Feb. 21, 2014) .................13

*Sturm v. Marriott Marquis Corp.*,
26 F. Supp. 2d 1358 (N.D. Ga. 1998)..............................................................17

*TranSouth Fin. Corp. v. Bell*,
149 F.3d 1292 (11th Cir. 1998) ........................................................................23

*Walden v. Fiore*,
571 U.S. 277 (2014)......................................................................................13, 14

*Weinstock v. Gannett, Inc.*,
No. 1:00-CV-2935-ODE, 2001 WL 1147214 (N.D. Ga. June 20,
2001) ..........................................................................................................2, 8, 10

## Statutes

Civ. L. R. 26.2(A) ...............................................................................................23

O.C.G.A. § 9-10-91.............................................................................................8

O.C.G.A. § 9-10-91(2).........................................................................................8

O.C.G.A. § 9-10-91(3).................................................................................*passim*

## Other Authorities

Fed R. Civ. P. 12(b)(2).................................................................................3, 7, 14

U.S. Const. 14th Amendment, ....................................................................8, 13, 14

## INTRODUCTION

After uncovering Plaintiff Brandon Jones' ("Jones") scheme to defame Defendant William J. Pulte ("Pulte") through the use of fake Twitter accounts, Pulte filed suit against Jones in Florida state court for defamation and tortious interference on December 14, 2022. *See William J. Pulte v. Bandon Jones, Case No. 502022CA012238XXXXMB*, Circuit Court of the Fifteenth Judicial District, Palm Beach County, Florida (the "Florida Action"). A copy of the complaint in the Florida Action is attached hereto as Exhibit A.

Rather than bring a counterclaim in the Florida Action, Jones brought this action three months later alleging that Pulte—***not Jones***—made defamatory statements on Twitter, in the media and elsewhere. Importantly, virtually every purported defamatory statement in the Amended Complaint that Pulte is alleged to have made is either (i) about the Florida Action itself, or (ii) the Jones' conduct which forms the basis for the Florida Action. Moreover, each of the supposed defamatory statements (with the exception of one) is dated either on or after December 14, 2022—the day the Florida Action was filed. Dkt. 12 ("Am. Compl.") ¶¶ 73–138. In fact, the Amended Complaint acknowledges the Florida Action and devotes multiple pages to copying portions of Pulte's complaint in the Florida Action because, according to Jones, Pulte's publication of the allegations from the Florida Action is "false and *per se* defamatory." *Id.* ¶¶ 86–87. In essence, Jones ignored

the first-filed Florida Action and seeks to litigate his counterclaims against Pulte in a different state and forum.

Critically, this Court lacks personal jurisdiction over Pulte (a Florida resident) since the Amended Complaint does not establish sufficient contacts by Pulte with Georgia to confer jurisdiction under Georgia's long-arm statute, O.C.G.A. § 9-10-91(3). Jones relies almost exclusively on Pulte's purported defamatory statements via the media and Twitter that were "published in Georgia" (Am. Compl. ¶¶ 17–18, 20–21), but Georgia law requires Jones to allege contacts **apart from those acts giving rise to the suit**. *See Weinstock v. Gannett, Inc.*, No. 1:00-CV-2935-ODE, 2001 WL 1147214, at *2 (N.D. Ga. June 20, 2001). The other alleged contacts with Georgia fall woefully short of establishing personal jurisdiction over Pulte under both Georgia's long-arm statute and the Due Process Clause of the Fourteenth Amendment.

This Court need not even reach the personal jurisdiction question because there is an independent basis to dismiss, or at a minimum, stay this action pursuant to the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) due to the parallel, first-filed Florida Action involving the exact same parties, facts and legal claims. A comparison of the complaints in the Florida Action and in this action demonstrates that this case is substantially the same as the Florida Action since the claims made by Jones are

simply counterclaims based on the underlying facts in the Florida Action or the Florida Action itself.  In addition, the balance of the *Colorado River* factors clearly favors abstention.  Most critically, this action will create piecemeal litigation through duplicative discovery and motion efforts, wasted judicial resources, and conflicting rulings on the exact same evidence and legal theories.  In addition, the Florida Action is further along as discovery has commenced, and Jones' claims against Pulte can more than adequately be addressed as counterclaims in the Florida Action.  Finally, there is no dispute Jones' lawsuit is reactive and a deliberate attempt to circumvent the first-filed Florida Action.

Therefore, Pulte respectfully requests that this Court dismiss this action pursuant to Rule 12(b)(2), or pursuant to the abstention principles set forth in *Colorado River*.  In the alternative, Pulte requests that this Court stay this action pursuant to *Colorado River*.

## BACKGROUND

Pulte is a former director of the PulteGroup, and the grandson of the company's founder.  Am. Compl. ¶ 42.  Pulte has developed a large Twitter presence with 3.2 million followers through his charitable acts.  *Id.* ¶ 39.  Jones was a Senior Vice President – Field Operations for the PulteGroup and was named the next Chief Operating Officer in October 2022.  *Id.* ¶¶ 51, 53.  Thus, Jones was the right-hand to the Chief Executive Officer of the PulteGroup.

In late 2022, Pulte uncovered that Jones—despite his leadership role within the PulteGroup and pending promotion to COO—had been operating a network of fake Twitter accounts, which included using the identity of deceased individuals, to defame Pulte and publish false attacks against him, the PulteGroup, and Pulte's family. *Id.* ¶ 87. To end this misconduct and seek redress, Pulte filed the Florida Action on December 14, 2022. *Id.* ¶ 59. Shortly after the Florida Action was filed, Jones was terminated with cause by the PulteGroup's Board of Directors for his misconduct in unleashing the fake network of Twitter accounts to attack Pulte. *Id.* ¶¶ 53, 84. Jones' own behavior is responsible for his troubles, and now he seeks to blame his multiple victims in a misguided public relations and litigation strategy.

The complaint in the Florida Action sets forth in detail Jones' misconduct and defamatory statements. For example, it alleges that "Jones has created a sophisticated network of fictitious accounts to target, publish and artificially amplify incessant, targeted, coordinated and malicious harassment attacks on Pulte, his grandfather and The Pulte Family." Ex. A, ¶ 29. It further alleges that Jones "uses and frequently changes fake names for his bots," and in one case, "appears to have stolen the identity or photograph of a deceased man to conceal Jones's own identity." *Id.* ¶ 30. After Pulte posted to Twitter, Jones' "bots jump[ed] into the public comments to plant falsehoods, make statements that either are not true or rely on confidential, nonpublic information and/or disparage [Pulte's] reputation." *Id.* ¶ 41.

The complaint then provides multiple examples of Jones' malicious attacks on Pulte through fictitious Twitter accounts. *Id.* ¶¶ 44–75. As just one example, on October 9, 2022, Jones, through the fake Twitter account "Catalina Chen" (@EverythingTaket) wrote in reference to Pulte's grandfather and founder of the PulteGroup: "@pulte Nah, you just took advantage when his faculties were diminished. You manipulated an elderly man and are trying to highjack his legacy. He didn't 'wait' a generation. He got old and you were opportunistic." *Id.* ¶ 72.

On February 8, 2023, Jones removed the Florida Action to federal court in the Southern District of Florida. *See Pulte v. Jones*, Case No. 9:23-cv-80216-AMC (S.D. FL), Dkt. 1. In that court, Jones notified the Southern District of Florida of this case, and called it a "similar action" to the Florida Action. *Id.*, Dkt. 16. Despite removing to the Southern District of Florida, Jones never brought counterclaims in that forum. Following briefing, the district court remanded the case back to Florida state court because Pulte filed the Florida Action purely out of principal and not for any financial windfall and therefore seeks only nominal damages less (i.e., than $75,000); as a result, the amount in controversy requirement had not been met to establish diversity jurisdiction. *Id.*, Dkt. 17.

Following remand back to the state court, Pulte served written discovery on Jones, and has sought production of discovery from non-parties. *See* Florida Action Docket Sheet, Nos. 5, 16, 20, and 31, attached hereto as Exhibit B. Jones sought to

stay discovery, which the Florida state court denied on June 8, 2023. Ex. B, No. 39. In turn, Jones has served written discovery on Pulte. *Id.* at No. 40.

In yet another attempt to forum shop, Jones brought this action on March 22, 2023—***over three months after*** the filing of the Florida Action, instead of filing counterclaims in the Florida Action. Dkt. 1. Pulte filed a Motion to Dismiss, or in the Alternative, Stay this Action on May 17, 2023. Dkt. 9. Without responding to Pulte's motion, Jones filed the Amended Complaint on June 7, 2023. Dkt. 12.

The Amended Complaint alleges that Pulte defamed him in various forums, but virtually all of the purported defamatory statements set forth in the Amended Complaint concern (i) the Florida Action itself, or (ii) the facts underlying the Florida Action, *i.e.*, ***Jones' defamatory statements against Pulte*** through fake Twitter users. *Id.* For example, the Amended Complaint alleges Pulte made the following defamatory statements, all of which are about ***Jones' use of the fake Twitter accounts to attack Pulte and the Florida Action***:

- Basically the number 2 in this Fortune 500 company . . . taking a dead guy's identity and repurposing it for these twitter bots, for example, and then having these AI generated photos . . . and they're all attacking and amplifying each other. *Id.* ¶ 74.

- He stole the identity from a dead guy, posing as a dead guy to attack me, attack my father, grandfather. … [Jones was] operating these fake bot networks, these fake accounts, to attack us, conceivably in my opinion to probably make sure that … their job is safe … *Id.* ¶ 77.

- William J. Pulte . . . said he had informed the board of directors on Monday that Jones had been carrying out an online campaign—mainly on Twitter—

using stolen identities and aliases to accuse Pulte and his family of arson, elder abuse and violations of securities laws. *Id.* ¶ 81.

- The Pulte Family has called for an independent investigation firewalled off from executives to assess the extent to which company and shareholder resources were used in Jones' alleged illicit behavior. … These fake profiles included appropriating the full identity of a deceased man, 'Raymond Porter' of Olive Hill, Kentucky, who passed away on October 28, 2018. … The Raymond Hutchinson account is part of a fabricated network weaponized against Bill Pulte and other members of the Pulte family. … *Id.* ¶ 83.

All but one of the purported defamatory statements by Pulte were allegedly made either on or after the filing of the Florida Action.[1] *Id.* ¶¶ 73–138. Indeed, Jones devotes multiple pages of the Amended Complaint to allege that Pulte's "campaign to publicize" the allegations in Florida Action was defamatory. *Id.* ¶ 87. And, Jones admits that numerous purported defamatory statements made by Pulte were about the "Complaint he filed against Jones," *i.e.*, the Florida Action. *Id.* ¶¶ 94, 97, 102, 104, 106–110, 114–117, 121, 126.

## ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER PULTE AND MUST DISMISS THIS CASE PURSUANT TO RULE 12(B)(2)

As an initial matter, this Court must determine whether it has personal jurisdiction over Pulte, and Jones "bears the ultimate burden of establishing that

---

[1]     The remaining statement was allegedly made a mere two days before the filing of the Florida Action and, notably, also concerns the conduct underlying the Florida Action: "Pulte communicated to PulteGroup, including its board of directors, that Jones had been carrying out an online bot campaign—mainly on Twitter—using stolen identities and aliases to accuse Pulte and his family of arson, elder abuse and violations of securities laws." Am. Compl, ¶ 82.

personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (internal quotation marks omitted). "District courts in Georgia cannot conflate these two inquiries because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process." *Rothschild & Co. Continuation Holdings A.G. v. Sklarov*, 440 F. Supp. 3d 1385, 1389 (N.D. Ga. 2020).

Thus, Jones must independently establish that personal jurisdiction is proper under the Georgia long-arm statute, O.C.G.A. § 9-10-91, in addition to showing that the exercise of personal jurisdiction would not violate the Due Process Clause. The Amended Complaint fails to clear either bar.

### A. Jones' Has Not Established Personal Jurisdiction Under Georgia's Long-Arm Statute

Importantly, O.C.G.A. § 9-10-91(2) excludes "defamation" from the "tortious acts or omissions" that can establish personal jurisdiction if committed in Georgia. *See Weinstock*, 2001 WL 1147214, at *2 (noting that O.C.G.A. § 9-10-91(2) "functions to prohibit the court from exercising jurisdiction over nonresident

defendants whose only contacts with Georgia are the allegedly defamatory acts").

In acknowledgement of this, Jones attempts to plead personal jurisdiction under

O.C.G.A. § 9-10-91(3), which provides for personal jurisdiction of a non-resident

who "*regularly* does or solicits business, or engages in any other *persistent* course

of conduct, or derives *substantial* revenue from goods used or consumed or services

rendered in this state." O.C.G.A. § 9-10-91(3) (emphasis added). Jones focuses on

the first two ways to establish personal jurisdiction under O.C.G.A. § 9-10-91(3),

claiming "Pulte regularly does or solicits business in this state, and engages in other

persistent courses of conduct in this state …." Am. Compl. ¶ 16

Georgia's long-arm statute "requires that an out-of-state defendant must do

certain acts within the State of Georgia before he can be subjected to personal

jurisdiction." *Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of

Ames*, 279 Ga. 672, 673 (2005). In determining whether personal jurisdiction is

appropriate under O.C.G.A. § 9-10-91(3), "Georgia courts consider factors including

'whether (1) a defendant regularly does business or solicits business within Georgia;

(2) engages in a persistent course of conduct within Georgia; (3) derives substantial

revenue from services rendered within Georgia; (4) has employees located within

Georgia; or (5) is authorized to do business in Georgia.'" *IOU Cent., Inc. v. Schmitz*,

1:20-CV-00007-ELR, 2020 WL 6882648, at *4 (N.D. Ga. June 10, 2020) (quoting

*LABMD, Inc. v. Tiversa, Inc.*, 509 Fed. Appx. 842, 845 (11th Cir. 2013)).

In attempting to establish personal jurisdiction, Jones primarily points to (i) Pulte's purported "defamatory statements" made on Twitter and elsewhere "which were published in Georgia," and (ii) Pulte's purported "defamatory statements that are subject of this Amended Complaint" in two interviews with the Atlanta Journal-Constitution. *See id.* ¶¶ 17–18, 20–21, 34. But, the Georgia Supreme Court has held that to establish personal jurisdiction under O.C.G.A. § 9-10-91(3), Jones must set forth "requisite minimum contacts ***other than the commission of the tort itself***," *i.e.*, defamation. *Bradlee Mgmt. Servs., Inc. v. Cassells*, 249 Ga. 614, 617 (1982) (emphasis added); *see also Weinstock*, 2001 WL 1147214, at *2 ("Jurisdiction may be proper under subsection (3) if the defendant has contacts with the forum state ***apart from those acts giving rise to the suit***.") (emphasis added); *Hayes v. Irwin*, 541 F. Supp. 397, 421 (N.D. Ga. 1982) (stating that "the tortious act of defamation alone is insufficient to grant jurisdiction over a non-resident. There must be other contacts with the state before jurisdiction may properly be invoked."). Thus, Pulte's purported defamatory statements underlying this action cannot satisfy O.C.G.A. § 9-10-91(3).

Jones' other attempts to establish Pulte's contacts with Georgia fare no better. *First*, as for the claim that Pulte "regularly" does business in Georgia, Jones admits that Pulte's company, Pulte Capital Partners LLC, is a Michigan-based company, but alleges that it is has "business interests in Georgia, including an ownership

interest in at least one Georgia company." Am. Compl. ¶ 22. Without directly

spelling out this business interest, Jones appears to connect it with two Twitter posts

from 2022 by Pulte about a Georgia-based company, Gee Heating & Air

Conditioning.[2] *Id.* ¶¶ 28, 32.

But, there are ***no*** allegations that Pulte Capital Partners (i) is registered to do

business in Georgia, (ii) maintains property in Georgia, (iii) has employees in

Georgia, (iv) derives any income or revenue from activities in Georgia, (v) makes or

sells a product in Georgia, (vi) has a registered agent in Georgia, (vii) has bank

accounts in Georgia, or (viii) pays taxes in Georgia. Rather, these thin allegations

of a business interest—based on two social media posts—fail to establish that Pulte

***regularly*** does business in Georgia. *Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*,

1:18-CV-05385-SDG, 2021 WL 2355096, at *8 (N.D. Ga. June 9, 2021) (finding

that personal jurisdiction under O.C.G.A. § 9-10-91(3) had not been met where

defendant did not sell or make products in Georgia, was not registered to do business

in Georgia, and never paid taxes or owned property in Georgia); *Brandenburg v.*

*City of Vidalia*, 366 Ga. App. 51, 64, 880 S.E.2d 625, 635 (2022) (finding same

where the defendant was "not registered to do business in Georgia; does not have a

---

[2]  Notably, the Amended Complaint does not point to Gee Heating & Air Conditioning's
website, a press release, or any other evidence of a connection with Pulte Capital Partners. Nor
does the Amended Complaint proffer any evidence of the size of the purported investment in Gee
Heating & Air Conditioning.

registered agent for service of process in Georgia; does not provide services in Georgia; does not contract with any Georgia service providers; does not have an office, maintain bank accounts, or employ people in Georgia; does not solicit business in Georgia; and does not derive any income or revenue from Georgia").

*Second*, Jones concedes that Pulte was a director of Georgia-based PulteGroup, Inc. ***only*** until 2020, and that "Pulte currently has no formal role" with PulteGroup. Am. Compl. ¶ 25. Nonetheless, Jones points to Twitter posts from 2022 by Pulte about the PulteGroup and Pulte Homes to claim that Pulte engages in a "persistent course of conduct" in Georgia. *Id.* ¶¶ 27, 29, 33, 36. Jones also vaguely alleges that "Pulte regularly engaged with PulteGroup employees online, including Georgia-based employees," but provides no further details on this supposed online "engagement." *Id.*, ¶ 37. Pulte's purported social media posts about, or contacts to, a Georgia-based company he is ***not*** an employee, director or officer of is woefully deficient to establish a "persistent course of conduct" in Georgia under O.C.G.A. § 9-10-91(3). *See Doherty-Heinze v. Chrisley*, 3:21-CV-105-TCB, 2022 WL 18938046, at *6 (N.D. Ga. July 18, 2022) (interpreting "persistent course of conduct" to mean "constantly—and perhaps tenaciously—repeated or continued series of acts indicating a continuity of purpose"); *see also Jason v. Onuoha*, 1:17-CV-1982-TWT, 2017 WL 4812359, at *2 (N.D. Ga. Oct. 25, 2017) (declining to exercise personal jurisdiction under O.C.G.A. § 9-10-91(3) where alleged

defamatory "posts were accessible by residents of Georgia," and stating that such posts "cannot be said to demonstrate a 'persistent course of conduct' in this state").

Simply put, Pulte's alleged contacts with Georgia are "all too episodic and isolated to be regular business or a persistent course of conduct." *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 1:12-CV-02902-JEC, 2014 WL 688134, at *7 (N.D. Ga. Feb. 21, 2014). Thus, this action should be dismissed on this basis alone.

## B. Subjecting Pulte to Personal Jurisdiction Would Violate the Due Process Clause

This Court need not even consider whether personal jurisdiction of Pulte would violate the Due Process Clause of the Fourteenth Amendment since Jones has failed to establish jurisdiction under O.C.G.A. § 9-10-91(3). *Cobb v. Equifax Info. Services, LLC*, 122CV03195WMRCMS, 2023 WL 2933349, at *3 (N.D. Ga. Mar. 9, 2023) ("In Georgia, a due process analysis is appropriate only after it is first established that the nonresident defendant committed one of the acts described in the Long-Arm Statute."). Yet, even if the Court were to engage in this analysis, the result is the same.

To satisfy the Due Process Clause, Pulte "generally must have certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks omitted). Pulte's "suit-related conduct must create a substantial connection" with Georgia in two ways: (1) "the relationship must arise

out of contacts that the defendant *himself* creates with the forum State," and (2) the Court must look at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284–85.

Therefore, Jones cannot be the "only link" between Pulte and Georgia (*id.* at 285), so to the extent Jones points to the defamatory statements made by Pulte, or Jones' claimed injury from those statements in Georgia, those allegations cannot satisfy Due Process. *Id.* at 290 (noting that under the due process analysis, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way").

For the same reasons as explained above, Pulte's alleged "contacts" with Georgia aside from the defamatory statements—*i.e.*, social media posts about Gee Heating & Air Conditioning, the PulteGroup, or visiting Atlanta (Am. Compl. ¶¶ 22–33)—are too "random, fortuitous, or attenuated" to establish the requisite minimum contacts with Georgia such that exercising personal jurisdiction over Pulte would satisfy the Due Process Clause. *Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.") (internal quotation marks omitted).

Accordingly, this Court lacks personal jurisdiction, and therefore, must dismiss this action pursuant to Rule 12(b)(2).

## II.   ABSTENTION IS WARRANTED UNDER *COLORADO RIVER*

This Court need not even reach the personal jurisdiction question because there is an independent basis to dismiss, or in the alternative, stay this action. The Supreme Court in *Colorado River* granted lower courts the ability to abstain from exercising jurisdiction over duplicative and reactive cases like Jones' action. The supposed defamatory statements made by Pulte arise from either the Florida Action itself, or the facts underlying the Florida Action, rendering this action "substantially" the same as the Florida Action. The balance of factors under *Colorado River* weighs heavily in favor of abstention, as there is a substantial risk in piecemeal litigation through duplicative discovery and motions, wasted judicial resources and potential conflicting rulings. Moreover, the Florida Action has proceeded to discovery and Jones' defamation claims against Pulte can—and should be—brought as counterclaims in the Florida Action for judicial administration purposes.

### A.   Legal Standard

In *Colorado River*, the U.S. Supreme Court held that federal courts could abstain from a case if (i) there was a parallel state court action pending, and (ii) abstention was necessary for judicial administration purposes. 424 U.S. at 818–20. In essence, "the *Colorado River* doctrine recognizes the power of federal courts to

refrain from hearing ... cases which are duplicative of a pending state proceeding." *Gold-Fogel v. Fogel*, 16 F.4th 790, 800 (11th Cir. 2021) (internal quotation marks omitted). Courts faced with a pending parallel state court action must consider whether "'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' nonetheless counsels in favor of dismissal or staying of the federal action in favor of the state one." *Colorado River,* 424 U.S at 817.

"A court considering whether to stay or dismiss federal proceedings under the *Colorado River* doctrine must engage in a two-step analysis." *Gold-Fogel*, 16 F.4[th] at 800. First, the Court must determine as a threshold matter whether the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). Such a determination does not require that the "federal and state cases share *identical* parties, issues, and requests for relief." *Id.* at 1329; *Gold-Fogel*, 16 F.4th at 801 ("The proceedings need not be exactly parallel, as long as they are substantially similar.") (cleaned up)

Second, if the federal and state cases are "substantially" the same, then the Court must consider a variety of factors to determine if *Colorado River* abstention is appropriate:

(1) whether one of the courts has assumed jurisdiction over property,
(2) the inconvenience of the federal forum, (3) the potential for

piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, ... (6) the adequacy of the state court to protect the parties' rights[,] (7) the vexatious or reactive nature of either the federal or the state litigation, and (8) whether the concurrent cases involve a federal statute that evinces a policy favoring abstention

*Id.* at 800 (quoting *Ambrosia Coal*, 368 F.3d at 1331). Importantly, the "list of factors is not exhaustive," and this Court "should not apply these factors mechanically in evaluating whether to grant a dismissal or stay of the federal action in favor of the parallel state action." *Id.*; *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013) ("No single factor is dispositive …."); *Sturm v. Marriott Marquis Corp.*, 26 F. Supp. 2d 1358, 1372 (N.D. Ga. 1998) ("Under any given set of circumstances a factor may be given great weight or little weight depending on its relevance to the facts.").

### B. This Action is Substantially Similar to the Florida Action

There can be no serious dispute as to "whether the federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal*, 368 F.3d at 1330. In fact, Jones has labeled the Florida Action "a similar action." *See Pulte v. Jones*, Case No. 9:23-cv-80216-AMC (S.D. FL), Dkt. 16. The parties in this case—Jones and Pulte—are the same parties in the Florida Action. Each action brings the same principal cause of action—defamation. And, each action involves the same issues and underlying facts—the Florida Action concerns Jones' alleged misuse of fake Twitter accounts to defame Pulte, whereas

this action concerns Pulte's alleged statements **about Jones' misuse of fake Twitter accounts to defame Pulte and the Florida Action**. Am. Compl. ¶¶ 73–138. Indeed, Jones devotes nearly five pages of the Amended Complaint alleging that Pulte defamed him through a **"campaign to publicize" the Florida Action**. *Id.* ¶¶ 86–87 (emphasis added). Moreover, Jones admits that many of the purported defamatory statements made by Pulte were about the "**Complaint he filed against Jones**," *i.e.*, the Florida Action. *Id.* ¶¶ 94, 97, 102, 104, 106–110, 114–117, 121, 126 (emphasis added).

The timing of the alleged defamatory statements in the Amended Complaint further supports that this action and the Florida Action are substantially the same. With the exception of one out of over 70 alleged defamatory statements, all of Pulte's statements were allegedly made either on or after the date the Florida Action was filed—December 14, 2022. *Id.* ¶¶ 73–138.

Jones dressed up counterclaims against Pulte that should have been brought in the Florida Action and instead filed them as a new, duplicative action in this Court. As should be apparent, Pulte's defense to Jones' defamation claims (should this case proceed) would entail proving the truth of what is alleged in the Florida Action— namely, Jones' misconduct and his campaign to smear Pulte through fake Twitter accounts. There is simply no escaping the substantial overlap between these two cases. *See ACE Am. Ins. Co. v. Newcomb & Boyd, LLP*, No. 1:17-CV-508-MHC,

2017 WL 7660405, at *3 (N.D. Ga. Sept. 28, 2017) (staying case under *Colorado River* and finding that "both cases arise out of the same set of operative facts and involve the substantially same parties and the same issues").

## C. The Balance of the *Colorado River* Factors Favors Abstention

Since the Florida Action and this action are substantially the same, the Court must weigh the *Colorado River* factors to determine whether abstention is appropriate. While a few factors are either not applicable (*i.e.*, jurisdiction over property) or are otherwise neutral (*i.e.*, inconvenience of the forum, or application of state law), the balance of the applicable factors in this case clearly favors abstention.

### 1. There is a Substantial Risk of Piecemeal Litigation.

"Piecemeal litigation ... occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Newyorksocialdiary.com, LLC v. Palm Beach Soc. Diary LLC*, No. 21-81718-CIV, 2022 WL 970878, at *4 (S.D. Fla. Mar. 31, 2022) (quoting 32A Am. Jur. 2d Federal Courts § 1061). Numerous courts in this Circuit have found this precise threat of piecemeal litigation weighs in favor of abstention where there is litigation over the same legal and factual issues.

For example, in *Newyorksocialdiary.com, LLC v. Palm Beach Soc. Diary LLC*, No. 21-81718-CIV, 2022 WL 970878, (S.D. Fla. Mar. 31, 2022), the defendant

brought suit for trademark infringement in Florida state court over the use of the name "Palm Beach Social Diary." *Id.* at *1. Similar to Jones in this case, about four months later, the plaintiff brought a parallel suit in federal court for trademark infringement over the use of the same name. *Id.* Since "[b]oth actions center[ed] around a dispute over the 'Palm Beach Social Diary' mark," the court found a "significant risk" of "duplication of efforts, and an overall waste of judicial resources," and stayed the action pursuant to *Colorado River*. *Id.* at * 3–6; *see also Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1379 (S.D. Fla. 2014) (staying action pursuant to *Colorado* River and finding state and federal actions were "so inextricably intertwined in both their factual and legal issues that dual litigation would likely result in deleterious duplication of judicial resources"); *Hendricks v. Mortg. Elec. Registration Sys., Inc.*, No. 8:12-CV-2801-T-30TGW, 2013 WL 1279035, at *1 (M.D. Fla. Mar. 28, 2013) (dismissing action pursuant to *Colorado River* and finding potential for piecemeal litigation because "the issues in both forums revolve around the same Florida real estate"); *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (affirming abstention under *Colorado River* where there was a "distinct danger of piecemeal litigation in this case if both the state and federal actions were allowed to proceed").

This action poses a significant risk of piecemeal litigation because the factual and legal issues in each action are inextricably intertwined. Should this action

proceed, Pulte's defense to Jones' defamation claims will entail proving the truth of the conduct outlined in the Florida Action and Jones' misuse of fake Twitter accounts to defame Pulte. Thus, the parties will seek the same discovery in both actions, and each forum will be forced to determine the scope of the same discovery which could present conflicts. *See CCB, L.L.C. v. BankTrust*, No. 3:10-CV-228/LAC/EMT, 2011 WL 13232376, at *2 (N.D. Fla. Jan. 3, 2011) (staying action under *Colorado River* and noting the risk of "incongruent rulings between the two fora as far as what information is allowed to be exchanged between the parties"), *affirmed*, *CCB, LLC v. BankTrust*, 438 F. App'x 833, 834 (11th Cir. 2011). Additionally, each forum will ultimately need to resolve the merits of competing defamation claims based on the same facts and discovery. As such, the parties and each forum will be exposed to unnecessary and wasteful duplication of efforts through discovery, summary judgment and beyond. *See ACE Am. Ins.*, 2017 WL 7660405, at *3–4 (noting that "facts and legal issues in both cases are virtually identical," and therefore, "permitting both cases to proceed simultaneously would be duplicitous and a waste of judicial resources").

Aside from concerns over duplicative efforts and judicial economy, competing summary judgment motions or merits rulings on the same legal issues and facts raises the threat of conflicting rulings. *Gold-Fogel*, 16 F.4th at 802 (affirming grant of stay under *Colorado River* because, among other things, parallel

resolution of state and federal cases "could result in conflicting rulings"); *see also ACE Am. Ins.*, 2017 WL 7660405, at *4 ("there are dispositive motions currently pending in both courts which could lead to inconsistent rulings of consequence which would be true at every stage of litigation and could potentially lead to *res judicata* problems").

Specifically, a ruling in Pulte's favor on the defamation claims in the Florida Action (Jones' defamed Pulte through fake Twitter users) would directly conflict with a favorable ruling on Jones' claims in this case (Pulte defamed Jones through statements about Jones' misuse of fake Twitter users). In other words, if the Florida state court determines that Jones defamed Pulte through the use of fake Twitter accounts, this Court could not determine that Pulte somehow made defamatory statement about Jones' misuse of fake Twitter accounts. Thus, a favorable ruling in one forum could be dispositive and binding on the other. *See Corestates, Inc. v. Phillips*, No. 1:16-CV-1170-ODE, 2016 WL 9454438, at *6 (N.D. Ga. Aug. 5, 2016) (staying case pursuant to *Colorado River* and finding that federal and state actions were "sufficiently intertwined that any ruling in one case is likely to affect the outcome in the others"); *Amason & Assocs., Inc. v. Columbus Land Dev., LLC*, No. 7:12-CVB02459-JHE, 2014 WL 467509, at *12 (N.D. Ala. Feb. 5, 2014) (adopting recommendation from magistrate to stay case under *Colorado River*, and noting the

"significant potential" that a decision in the state court action "will moot the issues pending before this court").

Accordingly, given the significant overlap of the factual and legal issues between this action and the Florida Action, the risk of piecemeal litigation through duplicative efforts, wasted judicial resources, and the potential for conflicting rulings weighs in favor of abstention.

### 2. The Florida Action Has Progressed Further.

Courts consider not only "the order in which the fora obtained jurisdiction," but also pay particular attention to "the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998).

Here, the Florida Action is the first-filed action, and was brought over three months prior to the commencement of this action. Moreover, there has been further progress in the Florida Action as Pulte has issued written discovery to Jones and served subpoenas on non-parties, despite Jones' efforts to unsuccessfully remove the Florida Action to federal court, throw up personal jurisdiction defenses, and seek a stay of discovery. *See* Ex. B. Indeed, the Florida state court recently denied Jones' efforts to stay discovery, and in return, Jones has now propounded written discovery on Pulte. *Id.*

Meanwhile, this action is only in its infancy and no merits discovery will proceed until this motion is resolved. *See* Civ. L. R. 26.2(A). Accordingly, this factor weighs in favor of abstention. *See Amason*, 2014 WL 467509, at *13 (noting that while federal action was filed first, written discovery had been propounded in state action, and defendants had not answered complaint, nor had discovery begun in federal action); *see also Georgia v. U.S. Army Corps of Engineers*, 223 F.R.D. 691, 698 (N.D. Ga. 2004) (staying case under *Colorado River* and finding that underlying action was "in its infancy" compared to other pending actions).

### 3.     Jones' Claims Should Be Brought as Counterclaims.

The Florida state court is a more than adequate forum for the resolution of Jones' claims against Pulte. Jones only brings state-law claims for defamation and punitive damages, and does not assert any claims under federal law. And, Jones' defamation claims are not particularly complex such that the Florida state court would have difficulty applying Georgia law to Jones' claims, to the extent it found Georgia law applies to those claims. Thus, Jones can and should litigate his claims against Pulte in the Florida state court.

### 4.     Jones' Lawsuit Against Pulte Is Reactive.

Finally, Jones' decision to file this action over three months after the filing of the Florida Action can only be considered reactive in nature. Rather than bring his purported claims against Pulte for defamation as counterclaims in the Florida Action,

he filed suit in a completely different forum and state—one which lacks personal jurisdiction over Pulte. This seemingly was done in an effort to force Pulte to litigate in multiple forums and thwart the Florida Action which, at the time of filing this action, had been improperly removed to federal court. *See Pulte v. Jones*, Case No. 9:23-cv-80216-AMC (S.D. FL), Dkt. 1. Since Jones already had a forum to bring his claims as counterclaims, this factor also weighs in favor of abstention. *See Hendricks*, 2013 WL 1279035, at *5 (finding the commencement of federal action was "reactive in nature, especially as it seems Plaintiffs should be raising the arguments they make in this case as defenses or counterclaims in the state foreclosure proceeding," and that it was "evident Plaintiffs seek to use the instant litigation to thwart the state foreclosure proceeding"). And, given the Court's lack of personal jurisdiction over Pulte in this reactive lawsuit, abstention is all the more appropriate.

## CONCLUSION

Since this Court lacks personal jurisdiction, Pulte respectfully requests that this Court dismiss this action. Even if this Court does not reach that question or concludes it does have personal jurisdiction, Pulte respectfully requests that this Court issue an order dismissing, or in the alternative, staying this action pursuant to the abstention principles set forth in *Colorado River* because this action is

substantially similar to the Florida Action, and the balance of the factors outlined above weigh heavily in favor of abstention.

This 21st day of June, 2023.

/s/ J. Carole Thompson Hord
J. Carole Thompson Hord
Georgia Bar No. 291473
Andrew H. Pinter
Georgia Bar No. 232922
SCHREEDER WHEELER & FLINT, LLP
1100 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
(404) 681-3450
(404) 681-1046 (fax)
chord@swfllp.com
apinter@swfllp.com

William C. O'Neil (*pro hac vice*)
A. Matthew Durkin (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600
(312) 558-5700 (fax)
woneil@winston.com
mdurkin@winston.com

*Attorneys for Defendant William J. Pulte*

## CERTIFICATION OF FONT SIZE

Pursuant to L.R. 7.1D, N.D. Ga., I hereby certify that the foregoing has been prepared using the 14 point Times New Roman font approved in L.R. 5.1C, N.D. Ga.

This 21st day of June, 2023

*/s/ J. Carole Thompson Hord*
J. CAROLE THOMPSON HORD
Georgia Bar No. 291473

SCHREEDER WHEELER & FLINT, LLP
1100 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 681-3450
Facsimile: (404) 681-1046
Email: chord@swfllp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2023, I electronically filed this **Renewed Motion to Dismiss, or in the Alternative, Stay These Proceedings** and **Defendant William J. Pulte's Memorandum of Law in Support thereof** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

*/s/ J. Carole Thompson Hord*
J. CAROLE THOMPSON HORD
Georgia Bar No. 291473

SCHREEDER WHEELER & FLINT, LLP
1100 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 681-3450
Facsimile: (404) 681-1046
Email: chord@swfllp.com