**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

Brandon Jones,                               )
                                             )
      Plaintiff,                      )
                                             )
v.                                           )    Case No. 1:23-cv-01228-SEG
                                             )
William J. Pulte,                            )
                                             )
      Defendant.                      )
                                             )
_____             )

**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS</u>**

COMES NOW Plaintiff Brandon Jones and files this brief in opposition to Defendant William J. Pulte's ("Pulte") Renewed Motion to Dismiss, or in the Alternative, Stay this Action (Doc. 16), showing this Honorable Court as follows:

## **INTRODUCTION**

Pulte has relentlessly and falsely defamed Jones in a months-long campaign that is a thinly veiled ploy to vanquish his foes at the company his grandfather founded and to gain power. That company, PulteGroup, Inc. ("PulteGroup"), is based in Georgia, where Jones also lived and worked—as Pulte knew. Pulte himself sat on the PulteGroup board from 2016 to 2020, and has been operating in Georgia ever since, both personally and through his wholly owned LLC.

Despite Pulte's years' long and continuing relationships and activities in Georgia, he argues the Court cannot exercise personal jurisdiction over him. This defies the scope of Georgia's long-arm statute, which should be "construe[d] . . . broadly and inclusively," as the policy of this state is "that to require Georgia defamation victims to resort to possibly distant forums for redress would be unduly burdensome." *Process Control Corp. v. Witherup Fabrication & Erection Inc.*, 439 F. Supp. 1284, 1286 (N.D. Ga. 1977). Pulte's thin constitutional due process analysis is essentially a concession, as he does not even address the seminal case under which jurisdiction is clear: *Calder v. Jones*, 465 U.S. 783 (1984).

1

Finally, Pulte turns to *Colorado River* abstention, an "extraordinary and narrow exception" to a court exercising jurisdiction that applies in rare circumstances—it is even disfavored where piecemeal litigation may result, unless it would be "abnormally excessive or deleterious." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1331, 1333 (11th Cir. 2004). Not that such a risk is present here. Not one of the tweets that is an alleged basis for a claim in Pulte's lawsuit is an alleged basis for a claim in Jones's lawsuit.  And while a fraction of Jones's lawsuit pursues defamation claims based on aspects of statements that Pulte republished from his own lawsuit, those republished statements are not actually at issue in Pulte's lawsuit. Pulte included them in his lawsuit merely to attack Jones, but they are wholly irrelevant to the elements of Pulte's claims and will never be adjudicated in Florida.  Moreover, this Court should refuse to abstain because Pulte's lawsuit is vexatious—part of his four-pronged attack on Jones and PulteGroup that is more focused on trying to uncover dirt through discovery rather than pursuing actual relief. Thus, *Colorado River* abstention is unwarranted.

## **BACKGROUND**

Jones is a citizen of Georgia who was a former executive of PulteGroup, Inc.—a Georgia corporation that Defendant Pulte's grandfather founded. (Doc. 12 ¶¶ 25, 45, 75).  Since Pulte's tenure on PulteGroup's board ended in 2020, he has

tried to elbow his way back in by persistently attacking the company and its leadership, which included Jones. (*Id.* ¶¶ 3-4). From December 1, 2022, to March 21, 2023, Pulte tweeted about PulteGroup no less than 30 times, exclusive of the tweets for which Jones is suing him. (*Id.* ¶ 36).

Pulte relentlessly aimed his tortious conduct at Jones and the state of Georgia, knowing that Jones both lived and worked here. (*Id.* ¶ 13, 24-25, 38). Pulte even took credit for Jones's termination from PulteGroup in the midst of his defamatory campaign. (*Id.* ¶ 54).  Since mid-December 2022, Pulte tweeted about Jones more than 200 times and has repeatedly defamed him through the media, including the *Atlanta Journal Constitution*. (*Id.* ¶¶ 18, 60).  Pulte's vendetta against Jones centers around PulteGroup, whose principal place of business is in Georgia, as Pulte knows. (*Id.* ¶¶ 2, 4-9, 24-25). Many of Pulte's false and defamatory tweets were specifically targeted at a Georgia audience, including tweets linking to PulteGroup's Twitter account and tweets linking to PulteGroup's stock ticker. (*Id.* ¶ 20). Pulte also actively recruited sources in Georgia for his defamation of Jones. (*Id.* ¶ 21).

Pulte himself has strong ties to Georgia that have persisted from 2016 to present, from the time Pulte was on the PulteGroup's board, through his current persistent attempts to gain power in the company. (*Id.* ¶¶ 40-46). Only two months before Pulte started attacking Jones, Pulte stated that he has "business associates . .

. [and] lawyers in Atlanta," and that news about Atlanta "hit 'home'" for him. (*Id.* ¶ 33). In 2022, Pulte touted the business his wholly owned LLC (Pulte Capital) conducts in Georgia with its "Business Partner," a Georgia company that services in-state clients. (*Id.* ¶¶ 22-23, 28, 32).[1] Pulte personally solicits clients for this Georgia service provider, which he calls "one of Our Pulte Capital Companies." (*Id.* ¶¶ 28, 32). Pulte also personally traveled to Georgia in May of 2022, where "always loves spending time," to "expand[] ventures," resulting in a "productive day." (*Id.* ¶¶ 30-31). On February 2, 2022, Pulte took credit, in part, for building a special needs facility in Alpharetta, and then invited people to go there. (*Id.* ¶ 27).  Just days before the Amended Complaint ("Complaint") was filed, Pulte provided statements to the *Atlanta Business Chronicle*. (*Id.* ¶ 34). During all relevant times, Pulte regularly engaged with PulteGroup employees online, including Georgia-based employees. (*Id.* ¶ 35).

Pulte eventually set his sights on Jones, who had been anonymously tweeting about Pulte using multiple Twitter accounts. (Grunberg Decl. Ex. A ¶ 9; *see, e.g.*,

---

[1] Despite Pulte referring to this Georgia company as "one of Our Pulte Capital Companies" and a "Business Partner," in a footnote devoid of evidence, he appears to question the validity of his own public statements on the issue. (Doc. 16 at 19 n.2). While the premise of the Complaint is that Pulte makes false statements, if he wished to argue that he misrepresented the extent of the connection with the Georgia company, he needed to do so with evidence—which he did not.

Doc. 12 ¶ 96). Pulte took that as an opportunity to file a Florida lawsuit ("Florida Action") that he is using as a tool to get discovery—and dirt—related to PulteGroup. (Doc. 16-1). Before Pulte served Jones with process in the Florida Action—waiting more than 5 weeks to do so—Pulte served a notice of non-party subpoena for Twitter seeking, *inter alia*, the Twitter data of PulteGroup's General Counsel. (Grunberg Decl. ¶¶ 10-11). The majority of Pulte's first requests for production to Jones probe into PulteGroup, its executives, and other members of Pulte's own family, rather Jones's tweets. (*Id.* Ex. F). Pulte purposefully limited his request for damages to less than $75,000 to avoid federal court and potential discovery stays. (*Id.*). Pulte has also launched litigation against Jones and/or PulteGroup in three states, using third parties to do his bidding: (1) a third party's California lawsuit against Jones, seeking sub-$25,000 in damages, that Pulte admits to "assist[ing]" (*id.* ¶ 3, Ex. B); (2) a third party's North Carolina lawsuit against Jones, PulteGroup, and its directors, that reads like a PR statement for Pulte, attaches that plaintiff's correspondence with Pulte, and also seeks sub-$75,000 in damages (*id.* Ex. C); and (3) a third party's Michigan shareholder's lawsuit against PulteGroup, seeking information about Jones and PulteGroup, particularly as it relates to Pulte (*id.* Ex. D).[2]

---

[2] The plaintiff in that lawsuit is also connected to Pulte, as evidenced by their social media interactions. (Grunberg Decl. Ex. E).

While the Florida Action is based on Jones's tweets about Pulte and third parties (*see, e.g.*, Doc. 16-1 ¶ 53 (stating Pulte takes credit for his grandfather's life works)), Jones's action ("Georgia Action") is based on Pulte's false and defamatory statements about Jones—e.g., that he was terminated for illegal pornography. (Doc. 12 ¶ 83). There is not a single publication that Pulte is suing in the Florida Action that Jones is suing for in Georgia, nor do the respective publications temporally overlap. (*Compare* Doc. 16-1 *passim with* Doc. 12 *passim*). A fraction of the publications underlying Jones's defamation claims in the Georgia Action stem from Pulte's republication of the Florida Action Complaint. (*See* Doc. 12 ¶¶ 73-136).

## ARGUMENT

***First***, Jones has established a *prima facie* case for jurisdiction over Pulte through the allegations in his Complaint, which the Court must "construe[] . . . as true" because "they are uncontroverted by defendant's evidence." *See Paul, Hastings, Janofsky & Walker v. City of Tulsa*, 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002). And "the court makes all reasonable inferences in favor of the plaintiff." *Id.*

***Second***, the extraordinary, disfavored, and narrow basis for abstention based on *Colorado River* is unwarranted, including because there is no risk for abnormally excessive or deleterious piecemeal litigation.

## I.    Jurisdiction Exists Under the Long-Arm Statute

Personal jurisdiction over Pulte exists under Georgia's long-arm statute, which allows for jurisdiction where a defendant:

> [c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, ***or engages in any other persistent course of conduct***, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91(3) (emphasis added). Jones has alleged facts in the Complaint establishing a persistent course of conduct by Pulte in Georgia with respect to both Jones and PulteGroup, and Pulte has submitted no evidence to contradict any of those allegations. (*See generally* Doc. 12 ¶¶ 1, 3, 8-9, 16-21, 24-27, 33-36, 70-71). Specifically, Pulte has engaged in a persistent course of conduct designed to gain power over PulteGroup, including by regaining a seat on the board of the Georgia-based company—and it is in the context of that larger goal that Pulte has carried out his targeted attack on Jones. (*See generally id.* ¶¶ 3-5, 34-36, 38, 42-45).

Georgia's "policy" is to "exercise jurisdiction over nonresident defendants to the maximum extent permitted by procedural due process," and thus "under subsection (c) of [the] Long Arm Statute Georgia courts do have jurisdiction over nonresident defendants in **defamation cases** when there exist requisite **minimum contacts** other than the commission of the tort itself." *Bradlee Mgmt. Servs., Inc. v. Cassells*, 249 Ga. 614, 617 (1982) (emphasis added); *see also Process Control*, 439 F. Supp. at 1286.  Even in a defamation case, "in the absence of state cases defining

the scope of the Georgia long-arm statute, this court will construe it broadly and inclusively." *Process Control*, 439 F. Supp. at 1287. Indeed, the policy of this state is "that to require Georgia defamation victims to resort to possibly distant forums for redress would be unduly burdensome." *Id.*

Pulte attempts to graft requirements onto the long-arm statute that are not there. Section 9-10-91(3) does not require commercial activity—it applies when the defendant does business in Georgia "***or*** engages in ***any other*** persistent course of conduct." (Emphasis added). A persistent course of conduct requires only minimal activity. *See H.K. Corp. v. Lauter*, 336 F. Supp. 79, 81 (N.D. Ga. 1971) (finding persistent course of conduct by solicitation of Georgia customers and $19,000 in revenue). And it may be established by a business the defendant owns. For example, in *Cartwright v. Fokker Aircraft U.S.A., Inc.*, a subsidiary's contacts were imputed to the parent, and the court held that where the parent's "business may be directly affected by transactions occurring [in Georgia] it enjoys benefits from the laws of this State, and it has undoubtedly benefitted, to a degree, from the protection which our law has given." 713 F. Supp. 389, 393 (N.D. Ga. 1988), *disapproved of on other grounds by Vermeulen v. Renault, U.S.A. Inc.*, 965 F.2d 1014 (11th Cir. 1992).

Pulte cites this Court's recent opinion in *Doherty-Heinze v. Chrisley*, but he fails to admit that under the Court's analysis in that case, Jones's allegations in the

Complaint establish a persistent course of conduct sufficient to satisfy Section 9-10-91(3). No. 3:21-cv-105-TCB, 2022 WL 18938046, at *6-7 (N.D. Ga. Jul. 18, 2022). The court recognized that while there is limited Georgia case law on what constitutes a "persistent course of conduct," other courts have interpreted virtually identical statutory language. *Id.* at *7 n.9. For example, the D.C. Circuit held that a "'persistent course of conduct' requires 'something more' than an in-forum impact and 'exclude[s] cases in which that impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Id.* (quoting *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981)). The *Chrisley* Court noted that—as here—"[t]his is not a case of a defendant with 'scant' affiliations with the forum." *Id.* Thus, where the defendant "engaged in regular communications with Georgia residents," "frequently reached out directly to Georgia residents for information" about plaintiff, and had investigators obtain information about plaintiff from Georgia residents, the defendant's "actions constitute 'repeated conduct' in Georgia sufficient to qualify as a persistent course of conduct." *Id.*[3]

---

[3] *Accord Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987) ("persistent course of conduct" requires a "plus factor"); *First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1513 (4th Cir. 1986) (jurisdiction is appropriate in a defamation case for "persistent course of conduct" where defendant has "ongoing interaction" with the forum); *Akhmetshin v. Browder*, 993 F.3d 922, 965 (D.C. Cir. 2021) ("Unlike general jurisdiction, establishing a 'persistent course of conduct' is 'not a particularly high bar.'") (citation omitted).

Here, Pulte does not challenge that he caused a tortious injury in Georgia, nor could he. (Doc. 12 ¶¶ 16, 19-20, 59-140, 182). Nor can he challenge the sufficiency of Jones's allegations that Pulte has engaged in a "persistent course of conduct" in Georgia. His connections here are anything but "scant," dating back to at least 2016, and they have persisted, particularly with respect to PulteGroup. He was on the board of PulteGroup from 2016 to 2020, at the start of which he admitted he "would be spending more time in Atlanta." (*Id.* ¶¶ 25-26). From December 1, 2022, to March 21, 2023, Pulte tweeted about PulteGroup no less than 30 times, exclusive of the tweets for which Jones is suing him. (*Id.* ¶ 36). And during all relevant times, Pulte regularly engaged with PulteGroup employees online, including Georgia-based employees—including on LinkedIn and Twitter. (*Id.* ¶ 35).

And beyond PulteGroup, Pulte continues to do business and maintain an active role in Georgia. Just two months before Pulte launched his defamatory campaign against Jones, Pulte stated publicly that he has "business associates . . . [and] lawyers in Atlanta," and said that news about Atlanta "hit 'home'" for him. (*Id.* ¶ 33). On February 2, 2022, Pulte took credit, in part, for building a special needs facility in Alpharetta, and then invited people to go there. (*Id.* ¶ 27). Several times in 2022, Pulte admitted that his wholly owned LLC engages in Georgia business through its "Business Partner," a Georgia services company (*id.* ¶¶ 22-23, 28, 32)—

which is sufficient for Section 9-10-91(c) jurisdiction under *Cartwright*. Pulte personally solicits clients for this business partner, which he calls "one of Our Pulte Capital Companies." (*Id.* ¶¶ 28, 32). Pulte also personally traveled to Georgia in May of 2022, "expanding ventures." (*Id.* ¶¶ 29-31).

None of the cases Pulte cites declined to exercise long-arm jurisdiction in the face of the defendant having engaged in an ongoing attack of a Georgia business and a Georgia citizen, particularly where that defendant has connections with Georgia, including through engaged legal counsel and with Georgia businesses through a wholly owned business. Jurisdiction exists under Georgia's long-arm statute.

## II.   <u>Jurisdiction Satisfies Constitutional Due Process</u>

In obvious recognition that his position on this point is futile, Pulte has devoted only three paragraphs and cited one case in support of his claim that this Court's exercise of jurisdiction over him would violate constitutional due process. (Doc. 16 at 21-22). The facts are clear that, under even the lone case cited by Pulte, his contacts with Georgia are anything but random, fortuitous, or attenuated.

Pulte completely ignores that the Supreme Court case he relies on, *Walden v. Fiore*, 571 U.S. 277 (2014), reaffirmed the validity of the "effects test" previously set forth in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the defendants were subject to personal jurisdiction in California where:

> [t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm . . . was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over [defendants] is therefore proper in California based on the 'effects' of their Florida conduct in California.

*Id.* at 788-89. The Court was clear that jurisdiction was based on the "intentional conduct in Florida calculated to cause injury to respondent in California." *Id.* at 791. Thus, as the Court subsequently recognized in *Walden*, "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to [the forum], not just to the plaintiff. ***The strength of that connection was largely a function of the nature of the libel tort***." *Walden*, 571 U.S. at 287 (emphasis added).

The Eleventh Circuit has recognized a three-part test in applying *Calder*, "requiring a tort that was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) (citation omitted). Eleventh Circuit precedent is also clear that "[u]nder the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013).

As in *Calder*, this case involves the intentional tort of defamation, and Pulte

directed his defamation of Jones *at Georgia*. Pulte's assertion that his defamatory statements cannot satisfy due process is patently incorrect. (*See* Doc. 16 at 22). *Walden* specifically recognized that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." 571 U.S. at 286. And intentional torts can support the exercise of personal jurisdiction even "over the nonresident defendant who has no other contacts with the forum." *Licciardello*, 544 F.3d at 1285 (citing *Calder*, 465 U.S. at 790).

The facts of this case—taken from the allegations in the Complaint, which must be deemed true—are strikingly similar to the facts in *Calder*. As in *Calder*, Pulte's "intentional conduct in Florida [was] calculated to cause injury to [Jones] in [Georgia]." *See Calder*, 465 U.S. at 791. Pulte's vendetta against Jones centers around PulteGroup, whose principal place of business is in Georgia, a fact well-known to Pulte. (Doc. 12 ¶ 19, 25). Pulte actively recruited sources in Georgia for his defamation of Jones. (*Id.* ¶ 21). Pulte made statements to media sources located in Georgia, including the *Atlanta Journal Constitution* and the *Atlanta Business Chronicle*. (*Id.* ¶¶ 18, 34, 81). Pulte targeted Jones's activities in Georgia and took credit for Jones's termination by PulteGroup, which he knew occurred in Georgia where PulteGroup is located and where Jones lives. (*Id.* ¶¶ 8, 19, 24-26, 29, 38). As intended by Pulte, the effects of his tortious campaign against Jones were suffered

13

primarily in Georgia. (*Id.* ¶ 38). Pulte targeted Georgia, and he must "reasonably anticipate being haled into court" here to answer for his tortious conduct. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).[4]

### III.    *Colorado River* Abstention Is Unwarranted

Assuming the Court credits Pulte's unauthenticated evidence, it should nevertheless refuse to abstain under *Colorado River*. "The dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources." *Noonan S., Inc. v. Volusia Cnty.*, 841 F.2d 380, 383 (11th Cir. 1988). "Since the general rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter' in federal court, and since the federal courts have a virtually unflagging obligation to exercise their jurisdiction, *Colorado River* abstention applies in exceptional circumstances." *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (quoting *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817-18 (1976)). As the Supreme Court put it: "Only the clearest of justifications" warrants abstention. *Colorado River*, 424 U.S. at 819. "[A]bstention

---

[4] Pulte did not even attempt satisfy his burden of "mak[ing] a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice" based on the relevant factors, such as the interests of the forum, the plaintiff, and the judicial system. *See Louis Vuitton*, 736 F.3d at 1355, 1358.

'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Jackson-Platts*, 727 F.3d at 1140 (quoting *Colorado River*, 424 U.S. at 813). "And while abstention as a general matter is rare, *Colorado River* abstention is particularly rare, 'permissible in fewer circumstances than are the other abstention doctrines.'" *Id.* (quoting *Ambrosia*, 368 F.3d at 1331).

Application of the *Colorado River* doctrine involves a two-step analysis. *See Ambrosia*, 368 F.3d at 1330-32. First, as a threshold matter, the court determines if the federal and state proceedings are parallel—i.e., they "involve substantially the same parties and substantially the same issues." *Id.* at 1330, 1330 n.21. Second, the Court weighs a series of factors, described below. *Id.* at 1331-32.

### a. *Colorado River* First Step: The Actions Are Not Substantially the Same.

Given that the parties in both Actions are the same, the threshold first step turns on whether the issues are substantially the same. They are not. The prototypical *Colorado River* abstention case involves a dispute over the parties' rights regarding the same thing—whether that thing is an agreement or a river. *See, e.g.*, *Colorado River*, 424 U.S. 803 (Colorado River water rights); *Ambrosia*, 368 F.3d at 1330 (same agreement and a party's "obligations thereunder"); *ACE Am. Ins. Co. v. Newcomb & Boyd, LLP*, 1:17-CV-508-MHC, 2017 WL 7660405, at *1-2 (N.D. Ga. Sept. 28, 2017) (liability for the same defective boiler system). At best, Pulte

15

mistakes his inclusion of irrelevant accusations in his Florida Lawsuit to attack Jones as a rationale for this Court to take the "extraordinary step of abstention."

The Georgia Action is a defamation case filed by Jones against Pulte. The issues are whether Pulte is liable for defamation for falsely accusing Jones of, *inter alia*: (1) making death threats; (2) threatening the Pulte family with physical harm; (3) being terminated for illegal pornography; (4) being terminated for using Twitter bots; (4) engaging in identity theft; (5) disclosing his employer's confidential information; (6) violating SEC rules by tweeting about Pulte; (7) violating PulteGroup's policies in his statements about third parties; (8) violating his fiduciary duties to PulteGroup; (9) stalking and harassing Pulte's wife; (10) defaming PulteGroup's deceased founder; and (11) engaging in child sex crimes. (*See, e.g.*, Doc. 12 ¶¶ 139-84).

In contrast, the Florida Action is a defamation action Pulte filed *against* Jones. The issues in the Florida Action relate to Jones's tweets that pre-date Pulte's tweets and that address completely different factual issues. That is, the primary issues are whether Jones is liable for defamation for tweeting, *inter alia*: (1) Pulte "has nothing to do with Pulte Homes"; (2) Pulte "trades in his grandfather's legacy"; (3) the PulteGroup "turnaround" of 2016, for which Pulte takes credit, caused "layoffs"; (4) "since you never worked for Pulte, why do you feel entitlement"; (5) "[i]s this a

securities violation" in reference to Pulte's tweet about the 2016 turnaround; (6) "[i]s this story true," regarding Pulte's story that a PulteGroup colleague said his "family should give [him] more turkey at Thanksgiving for what I . . . did Our Family"; (7) "[w]hy isn't [Pulte] honest about this," in relation to the PulteGroup board previously buying back stock and laying off people during Pulte's 2016-2020 tenure on the board; and (8) Pulte "had massive compensation as a board member and a private jet." (*See, e.g.*, Doc. 16-1 at ¶¶ 53-93).

The respective Actions do not turn on the parties' rights related to the same agreement, pot of money, or some other thing. The same allegedly defamatory publications are not at issue in the Actions. Nor do the Actions turn on the truth or falsity of the same facts, or on the state of mind of the same people.

Pulte's argument that the actions are substantially similar because they are both about "Jones's alleged misuse of fake Twitter accounts to defame Pulte" misses the mark completely. Jones's use of Twitter accounts—fake or otherwise—is not relevant to any element of defamation to be proven by Pulte in the Florida Action. While publication is a fundamental element of defamation, it is agnostic to the medium used. And more importantly, publication is not even at issue in the Florida Action, because Jones has admitted that he published the statements in question. (Grunberg Decl. Ex. A ¶ 9). Jones has numerous defenses to the Florida Action,

including whether the statements are false and defamatory, whether they are about Pulte, whether they were made with actual malice, etc. But a favorable ruling for Pulte in the Florida Action would be that Jones's statements constituted defamation—not that Jones defamed Pulte *through fake Twitter bots*. Pulte's characterization of the mode of publication in the Florida Action is simply not relevant to any element of that case or any fact to be adjudicated in that case.

But it is relevant in this Georgia Action, because one of the defamatory statements asserted by Jones is Pulte's false accusation that Jones used Twitter bots to publish tweets. In this case, therefore, the truth or falsity of that statement is at issue. Even on this point, Pulte misrepresents the facts by asserting that an issue in this action will involve establishing the truth of whether Jones used "fake Twitter accounts to defame Pulte." (Doc. 16 at 29). But the claim here does not involve any statements by Pulte about "fake Twitter accounts"—the claim here is specifically based on Pulte's false accusation that Jones used a *network of Twitter bots* to publish the statements about him. (*See, e.g.*, Doc. 12 ¶ 139(i), (ii), and (iv)). And the issue of whether Pulte's accusation about Jones's use of *Twitter bots* is false and defamatory is not at issue and cannot possibly be adjudicated in the Florida Action.

Nor are the Actions substantially similar because Pulte's *republication* of the Florida Action Complaint is a basis for only a fraction of Jones's defamation claims

in the Georgia Action. Pulte again avoids addressing whether the Actions involve the same issues. They do not. Pulte's republished defamatory statements from the Florida Action Complaint are not at issue in the Florida Action. Pulte included those statements in a transparent ploy to attack Jones's reputation, as opposed to seeking relief. For example, the Florida Action Complaint accuses Jones of "following illicit pornography" and disclosing PulteGroup's "confidential information." (*See, e.g.*, Doc. 16-1, ¶¶ 8-9, 37-38). These allegations have no possible relevance to any element of any claim in the Florida Action. Indeed, Pulte does not—and cannot—explain how a finding in his Florida Action would affect Jones's Georgia Action.

Pulte nonsensically argues that the timing of his false and defamatory statements that are the basis of the Georgia Action support that the Actions are substantially the same. The opposite is true. The fact that the vast majority of the said statements post-date the Florida Action demonstrate the respective Actions relate to disparate conduct that is temporally divorced.

Ultimately, while Pulte proclaims in broad strokes that his defense in the Georgia Action would entail proving the truth of what is alleged in the Florida Action, that is simply untrue. Pulte included a litany of irrelevant, superfluous, false and defamatory statements through the Florida Complaint to take pot shots at Jones—e.g., alleging Jones "follow[ed] illicit pornography" and disclosed his

employer's confidential information.  But those statements are not in any way at issue in the Florida Action and cannot be adjudicated in that action.

### b. *Colorado River* Second Step: The Factors Weigh Against Abstention

As Pulte recognizes, the Eleventh Circuit has described the following factors for analyzing the second step of *Colorado Abstention*:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, (6) the adequacy of the state court to protect the parties' rights, (7) the vexatious or reactive nature of either the federal or the state litigation, and (8) whether the concurrent cases involve a federal statute that evinces a policy favoring abstention.

*Gold-Fogel v. Fogel*, 16 F.4th at 800 (citing *Ambrosia*, 368 F.3d at 1331) (cleaned up). These factors should not be "mechanically" applied, and the weight of a given factor varies "greatly from case to case." *Id.* at 800 (internal quotation marks omitted). But when assessing the above factors, "**the balance [is] heavily weighted in favor of the exercise of jurisdiction**." *Id.* (internal quotation marks omitted).

**1. The federal forum is not inconvenient.** Pulte does not challenge the convenience of this federal forum, rightfully. Pulte lives in Florida and touts his travels and connections to his neighboring state—Georgia.  But Pulte is incorrect in asserting that this factor is "neutral." (Doc. 16, 27). To the contrary, this factor weighs in favor of this Court's exercise of its jurisdiction in this case.

**2.  There is no potential for piecemeal litigation.** As discussed above, there is no risk of piece meal litigation—let alone to an abnormally excessive or deleterious extent—because the Actions are not substantially similar. *See Ambrosia*, 368 F.3d at 1333 (factor "does not favor abstention" absent likelihood "**abnormally excessive or deleterious**" piecemeal litigation) (emphasis added). In fact, if this Court were to abstain, the result would be nothing more than a wrongful delay of Jones' adjudication of his defamation claim against Pulte, because no result in the Florida Action concerning whether Jones defamed Pulte can have any impact on this action concerning whether Pulte defamed Jones.

The Eleventh Circuit has emphasized that "federal courts are **almost invariably obligated to exercise otherwise valid jurisdiction**" even when the "dual proceedings . . . **will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making**." *Id.* (emphasis added). For instance, in *Ambrosia*, the dueling actions involved the validity of the very same Agreement. *Id.* at 1323-26. Even still, the piecemeal-litigation factor did "not militate in favor of abstention," including because there was no statute at issue evincing a federal policy favoring abstention. *Id.* at 1333. And "there [was] no indication that piecemeal litigation poses any greater waste or danger [in that matter] than it does in the vast majority federal cases with concurrent state counterparts." *Id.*

Without explanation, Pulte proclaims that the factual and legal issues in the Actions are intertwined. They are not, but even if they were, this factor still would not militate towards abstention. Pulte cannot show that potential piecemeal litigation would be abnormally excessive or deleterious. Nor can he identify any federal statute at issue in this case that evinces a clear federal policy of abstention. These Actions do not even approach the intertwined actions in *Ambrosia*—with their diametrical aims related to the same agreement—because the core statements at issue in the Actions here pertain to different subject matters that cannot result in piecemeal litigation.[5]  Ultimately, if *Ambrosia* did not cross the line of posing a threat of piecemeal litigation that militated towards abstention, neither does this matter.

**3. The order in which the fora obtained jurisdiction.** Jones concedes the Florida Action was filed first and has proceeded further—albeit related to issues that bear little relevance to those here. But he does not concede that Florida has obtained jurisdiction over him.[6] In that regard, this factor is neutral at best. And discovery has

---

[5] All of the cases cited by Pulte involve ownership of a single thing. *Newyorksocialdiary.com, LLC v. Palm Beach Soc. Diary LLC*, 2022 WL 970878, at *4 (S.D. Fla. Mar. 31, 2022) (single trademark); *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1377 (S.D. Fla. 2014) (entitlement to same funds in a single account); *Hendricks v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 1279035, at *1 (M.D. Fla. Mar. 28, 2013) (same parcel of real estate); *Morrer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 996 (11th Cir. 2004) (water permit).

[6] Pulte falsely suggests Jones's jurisdictional defenses have failed. Jones's motion to dismiss for lack of personal jurisdiction is still pending. (Grunberg Decl. ¶ 8).

not progressed far in the Florida Action: e.g., only jurisdictional documents have been produced and no depositions have been taken. (Grunberg Decl. ¶¶ 9-10).

**4. Both state and federal law will be applied, and the Georgia federal court will protect the parties' rights.** While Jones's claims for defamation are grounded in state law, one of the primary defenses that Pulte will presumably rely upon is based on federal law—the protections for certain statements of opinion under the First Amendment of the U.S. Constitution. Moreover, as Pulte concedes, Jones's claims will indeed be governed by Georgia law, and thus a Georgia court is a more appropriate venue for their adjudication.

**5. Pulte's Florida Action is vexatious.** Pulte's Florida Action is a ploy to obtain discovery into PulteGroup in furtherance of a vendetta and a power grab rather than an honest pursuit of accountability. Pulte has limited his monetary demand in the Florida Action to sub-$75,000. And incredibly, Pulte is funding frivolous litigation against Jones in California, and likely in North Carolina, by third parties who also have limited their claims to less than $75,000. The sub-$75,000 demands indicate that Pulte and his conspirators do not expect actual relief. They expect discovery.

There is a method to this madness. Pulte wants to avoid the discovery stays and rigorous standards in federal court, in favor of relatively immediate and potentially unchecked discovery in the three state court actions. Pulte is willing to

dump money into cross-country litigation against Jones because he appears to believe that through discovery he can get enough dirt on PulteGroup to vanquish his PulteGroup enemies, rectify his ouster from the company's board, and ascend to the throne of PulteGroup based on his perceived birthright.[7] Pulte even attempted to get PulteGroup's General Counsel's Twitter data through a non-party subpoena to Twitter weeks before serving the Florida Action Complaint. And his requests for production to Jones in the Florida Action are focused on PulteGroup and its leaders.

The "why" of Jones's litigation is obvious from the Complaint. Among other things, Pulte falsely accused Jones of child sex crimes. Jones is entitled to vindicate himself against these heinous accusations, and he is entitled to his selected home forum, where he suffered from the defamation and where his counsel is located.[8]

Thus, this factor weighs against abstention.

**6. The concurrent cases do not involve a federal statute that evinces a policy favoring abstention.**  This factor thus weighs against abstention.

---

[7] Pulte is also funding litigation against PulteGroup in Michigan trying to get information about Jones's termination and a non-existent conspiracy against Pulte among the company's leadership. That litigation was dismissed last week.

[8] Pulte cites an inapposite case regarding a "reactive" claim where the federal court litigant could have raised his arguments as defenses in state court and was using the federal case to thwart state court foreclosure proceedings. *See Hendricks v. Mortg. Elec. Reg. Sys., Inc.*, 2013 WL 1279035, at *5 (M.D. Fla. Mar. 28, 2013). Pulte does not explain how the Georgia Action could thwart the Florida Action, or how Jones could address Pulte's scurrilous allegations through defenses in Florida.

## IV.    In the Alternative, Plaintiff Seeks Jurisdictional Discovery

If this Court is inclined to find that Jones failed to plead facts establishing personal jurisdiction over Pulte, he requests jurisdictional discovery based on Pulte's admissions about his robust Georgia connections, which will further reveal his persistent course of Georgia conduct. *See, e.g., Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 n.12 (1978) ("Where issues arise as to jurisdiction . . . discovery is available to ascertain the facts bearing on such issues.").[9]

## CONCLUSION

For the foregoing reasons, Jones requests that this Court deny Pulte's motion to dismiss. In the alternative, if the Court is not inclined to deny the motion, Jones requests an opportunity to conduct jurisdictional discovery.

Respectfully submitted this 5th day of July, 2023.

**WADE, GRUNBERG & WILSON, LLC**

*/s/ Jonathan D. Grunberg*
Nicole Jennings Wade
State Bar No. 390922
nwade@wgwlawfirm.com
Jonathan D. Grunberg

---

[9] While Jones is staunch in his position that this Court has jurisdiction over Pulte, and he objects to a Florida court exercising jurisdiction over him in the Florida Action, if the Court is inclined to dismiss this action, it may instead transfer the action to the Southern District of Florida pursuant 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses" and "in the interest of justice."

State Bar No. 869318
jgrunberg@wgwlawfirm.com
G. Taylor Wilson
State Bar No. 460781
twilson@wgwlawfirm.com

600 Peachtree Street, NE
Suite 3900
Atlanta, GA 30308
404-600-1153
404-969-4333 (fax)

*Counsel for Plaintiff*

## **CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D).

This 5th day of July, 2023.

*/s/ Jonathan D. Grunberg*
Jonathan D. Grunberg
Georgia Bar No. 869318
